John **RICHMEYER** and Susan Richmeyer, Plaintiffs–Respondents,

v.

**SUGAR CREEK BUILDERS INC.**, Samuel W. Thompson and Larry Thompson, Defendants–Appellants.

No. 62183.

Missouri Court of Appeals, Eastern District, Division Seven.

July 6, 1993.

Timothy H. Battern, St. Louis, for defendants-appellants.

Miller and Steeno, P.C., William F. Whealen, Jr., St. Louis, for plaintiffs-respondents.

KAROHL, Chief Judge.

Plaintiffs, John and Susan Richmeyer, sued Sugar Creek Builders, Inc. for breach of contract. The parties consented to a judgment in favor of plaintiffs against Sugar Creek Builders, Inc. for $14,774.80. That judgment is not at issue in this appeal. In separate counts, plaintiffs also sued Samuel and Larry Thompson for conversion, and Larry Thompson for fraud. The claims were tried to the court. It entered judgment for plaintiffs on the conversion claim, awarding $14,676.06 and for plaintiffs on the fraud claim, awarding $13,921 plus interest. We reverse because there is no substantial evidence to support the judgments.

Sugar Creek Builders, Inc. sells real estate. The individual defendants each own half of the stock. They are the only two officers, directors and authorized signatures on Sugar Creek's bank account. The same is true of Thomco Development, Inc., a company that purchases and develops lots.

On June 11, 1990, plaintiffs entered into a real estate sale contract with Sugar Creek for purchase of land and construction of a home. Plaintiffs never spoke with either of the Thompsons before entering into the contract. The contract provided that plaintiffs would pay Sugar Creek $2,000 earnest money at the time the contract was signed and would pay an additional $10,562 upon obtaining loan approv-

al. On the same day they entered into the contract, plaintiffs paid Sugar Creek the $2,000 earnest money. Defendants deposited the money in Sugar Creek's account. It was thereafter transferred to Thomco's account. Defendants used the money to pay Thomco's various expenses, a procedure followed by them without a problem for many successful sales of homes.

According to the contract terms, plaintiffs had 30 days after Sugar Creek accepted the contract on June 29, 1990, to obtain approval for a loan commitment for $100,000. Plaintiffs did not obtain loan approval within the 30 days, but they met with Larry Thompson in late July or early August and asked him for a contract extension, to which he agreed.

John Richmeyer testified he asked Larry Thompson if the additional earnest money could be placed in escrow, but Larry Thompson refused. He also testified Larry Thompson said, "Don't worry about your money." Plaintiffs rely entirely on this statement to support the fraud claim. There was no provision in the sale contract for an escrow of the earnest money.

The bank approved plaintiffs' loan on August 7, 1990. On August 15, 1990, plaintiffs paid Sugar Creek $11,165 additional earnest money.[1] Again, defendants deposited the money in Sugar Creek's account and then transferred it to Thomco's account.

In October 1990, Lemay Bank froze Sugar Creek's and Thomco's bank accounts. Sugar Creek was unable to fulfill its contractual obligations. The earnest money was not returned. Plaintiffs brought suit for breach of contract, conversion and fraud.

In the first point on appeal, defendant Larry Thompson contends the trial court erred in finding he committed fraud because there is no substantial evidence he made any false representations which induced plaintiffs to enter into a sale contract for purchase of a home. We agree.

A "judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976).

The elements of an action for fraud are: 1) a representation, 2) its falsity, 3) its materiality, 4) the speaker's knowledge of its falsity, or his ignorance of its truth, 5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated, 6) the hearer's ignorance of the falsity of the representation, 7) the hearer's reliance on the representation being true, 8) his right to rely thereon, and 9) the hearer's consequent and proximately caused injury. *Sofka v. Thal*, 662 S.W.2d 502, 506 (Mo.banc 1983). A "failure to establish any one single element is fatal to recovery." *Empire Gas Corp. v. Small's LP Gas Co.*, 637 S.W.2d 239, 243 (Mo.App.1982).

The elements at issue are whether there was a representation, whether it was false, and whether plaintiffs relied on the representation. The evidence does not establish these elements. Defendant, Larry Thompson, and plaintiff, John Richmeyer, both testified plaintiffs did not speak with Larry Thompson before plaintiffs signed the sales contract in June. Plaintiff, John Richmeyer, first spoke to Larry Thompson in late July or early August when he asked Larry Thompson for a contract extension. There is no claim and no evidence anyone, including Larry Thompson, made a false representation to the plaintiffs *before* they signed the contract. Moreover, the statement attributed to Larry Thompson is not a statement of fact: at most it was an opinion. Representations amounting to opinion are not actionable. *Wofford v. Kennedy's 2nd Street Co.*, 649 S.W.2d 912 (Mo.App.1983), *Watkins v. Gross*, 772 S.W.2d 22 (Mo.App.1989). Finally, in the absence of a representation,

---

**1.** The record does not explain the discrepancy between a contract balance of $10,562 and the payment of $11,165.

the element of reliance is missing. The fraud judgment is reversed.

In the second point on appeal, defendants Samuel and Larry Thompson contend the trial court erred in finding they committed conversion because there is no substantial evidence they wrongfully used plaintiffs' funds. We agree.

■ "Conversion may be proved in one of three ways: 1) by tortious taking; 2) by any use or appropriation to the use of the person in possession, indicating a claim of right in opposition to the rights of the owner; 3) by a refusal to give up possession to the owner on demand." *Arnold v. Prange*, 541 S.W.2d 27, 30 (Mo.App.1976).

First, there was no tortious taking of plaintiffs' money. Plaintiffs voluntarily paid Sugar Creek the $13,165 earnest money called for in the contract.

Second, there is no proof defendants used or appropriated the money contrary to plaintiffs' ownership. Once the plaintiffs paid their contractual debt to Sugar Creek, and Sugar Creek deposited the money in its account, plaintiffs relinquished control and ownership of the money. The money then belonged to Sugar Creek, not to the plaintiffs or the defendants. It is irrelevant that Sugar Creek subsequently transferred the money to Thomco's account. The transfer itself does not constitute conversion. Moreover, there is no proof defendants used the money for their own personal purposes. As officers of Thomco, defendants used the money to pay Thomco's various expenses. This use was legitimate.

Finally, defendants did not refuse to give up possession of the money when plaintiffs demanded defendants return it. Again, plaintiffs no longer owned the money at the time they requested its return. Additionally, defendants did not have access to the money when plaintiffs requested its return because the bank had frozen Sugar Creek's and Thomco's accounts. Thus, plaintiffs failed to establish defendants converted their money. We reverse the finding defendants Samuel and Larry Thompson committed conversion.

In the final point on appeal, defendants contend the trial court erred in piercing the corporate veil because there is no substantial evidence Sugar Creek was the "alter ego" of defendants. Defendants argue the corporation had an identity separate from the defendants. We agree.

■ In order to pierce a corporate veil, a plaintiff must show: 1) control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and 2) such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or dishonest and unjust act in contravention of plaintiff's legal rights; and 3) the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of. *Collet v. American National Stores, Inc.*, 708 S.W.2d 273, 284 (Mo.App.1986).

■ The evidence shows Sugar Creek existed independently of defendants. First, by suing Sugar Creek for breach of contract, plaintiffs implicitly acknowledged Sugar Creek was an active, legitimate corporation. Plaintiffs did not sue and made no effort to prove the individual defendants were liable for breach of contract; they merely sued Sugar Creek in its corporate form.

■ Second, banks did business with Sugar Creek. Sugar Creek had its own corporate bank account which was not a personal account of Samuel or Larry Thompson. The absence of assets or employees at any given time does not prove non-existence of a corporation.

The judgments for plaintiffs on Counts II and III are reversed.

PUDLOWSKI and CRANDALL, JJ., concur.